UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LILIAN GARCIA TRUJILLO,

    *Plaintiff*,

v.

UR MENDOZA JADDOU, *et al.*,

    *Defendants*.

Civil Action No. 1:23-cv-01366 (CJN)

## ORDER

Lilian Garcia Trujillo sued several government officials for unreasonably delaying a decision on her Form I-526 petition for an EB-5 visa. ECF 1. The government moves to dismiss for failure to state a plausible claim for relief. *See* ECF 19; Fed. R. Civ. P. 12(b)(6). In light of the Court of Appeals's intervening decision in *Da Costa v. Immigration Investor Program Office*, 80 F.4th 330 (D.C. Cir. 2023), the Court dismisses the case.

Since 1990, the United States has offered EB-5 visas for "qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise." 8 U.S.C. § 1153(b)(5)(A). To qualify for such a visa, an alien must make a capital investment in the United States that meets certain statutory requirements, including the creation of at least ten full-time jobs. *Id.* "[T]he first step in the application process is to file with [U.S. Citizenship and Immigration Services (USCIS)] a petition, called a Form I-526, for classification as an approved investor." *Da Costa*, 80 F.4th at 336. "After USCIS approves a Form I-526 petition, the noncitizen proceeds to the second step: applying for conditional lawful permanent resident status." *Id.*

1

The Immigration and Nationality Act governs the number and distribution of visas. *See* 8 U.S.C. §§ 1151–53. Among other restrictions, the statute imposes a per-country cap that limits "the total number of immigrant visas made available to natives of any single foreign state" to seven percent per year. *Id.* § 1152(a)(2). And it directs that employment-related visas, including EB-5 visas, "shall be issued to eligible immigrants in the order in which a petition [o]n behalf of each such immigrant is filed." *Id.* § 1153(e)(1). Recognizing the inefficiencies in reviewing applications of aliens from countries that were already fully subscribed in a particular year, USCIS modified its review process in January 2020 to give "priority to petitions where visas are immediately available, or soon available." USCIS, *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory* (Jan. 29, 2020), https://www.uscis.gov/archive/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory; ECF 19 at 3–5.

In April 2020, Trujillo invested $900,000 in a project to build luxury hotel rooms, condominiums, meeting spaces, restaurants, and a bar in Big Sky, Montana. ECF 1 at 5. The next month, Trujillo filed a Form I-526 petition with USCIS. *Id.* This petition fell under the Regional Center Program for EB-5 visas, which eases some of the requirements for projects in "a regional center in the United States, which has been designated by the Secretary of Homeland Security on the basis of a proposal for the promotion of economic growth, including prospective job creation and increased domestic capital investment." 8 U.S.C. § 1153(b)(5)(E)(i). While Trujillo's petition was under review, however, the statutory authorization for the Regional Center Program lapsed in July 2021. ECF 19 at 6; ECF 20 at 5 n.1. In March 2022, Congress reauthorized the Program through September 2027. *See* Consolidated Appropriations Act of 2022, Pub. L. No. 117-103, § 103(b), 136 Stat. 49, 1075 (codified as amended at 8 U.S.C. § 1153(b)(5)). Although USCIS has

since resumed review of Form I-526 petitions under the Regional Center Program, ECF 19 at 7, it has not yet made a final determination on Trujillo's petition.

In December 2022, Trujillo filed this action "to compel agency action unreasonably delayed." ECF 1 at 1. She requested that the Court issue a writ of mandamus and/or an order under the Administrative Procedure Act compelling the government to act on her Form I-526 petition within 30 days. *Id.* at 15. Although Trujillo originally filed the suit in the Southern District of Florida, that court transferred the case to the District of Columbia in May 2023. ECF 15; ECF 16. The government thereafter moved to dismiss. *See* ECF 19; Fed. R. Civ. P. 12(b)(6). Upon the Court's order, Min. Order of Mar. 29, 2024, the Parties have filed supplemental briefing addressing the effect of the Court of Appeals's rejection of similar claims in *Da Costa* and *Mukkavilli v. Jaddou*, No. 23-5138, 2024 WL 1231346 (D.C. Cir. March 22, 2024).

"To state a claim for unreasonable delay, Plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take, and, second, that the delay was unreasonable." *Da Costa*, 80 F.4th at 340 (citation and internal quotation marks omitted). The Parties focus their arguments on the second requirement regarding the unreasonableness of any delay. "The central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (citation and internal quotation marks omitted). In *Telecommunications Research & Action Center v. FCC*, the Court of Appeals laid out six factors that govern this inquiry. 750 F.2d 70, 80 (D.C. Cir. 1984). These *TRAC* factors dictate that "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be

reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* (citations and internal quotation marks omitted).

In *Da Costa*, the Court of Appeals applied the *TRAC* factors to affirm the dismissal of claims by aliens who argued that USCIS had unreasonably delayed consideration of their Form I-526 petitions during a period that substantially overlaps with the inaction on Trujillo's petition. *See* 80 F.4th at 338, 340–46 (reviewing inaction on Form I-526 petitions submitted in mid- to late-2019). The Court of Appeals determined that "[t]he two factors most important in this case are factor one—whether the agency's timing of adjudications follows a 'rule of reason'—and factor four—the effect that an order 'expediting delayed action' would have on 'agency activities of a higher or competing priority'" and concluded that both factors weighed in favor of the government. *Id.* at 340–344 (quoting *TRAC*, 750 F.2d at 80). It then explained that "Plaintiffs' arguments regarding the remaining *TRAC* factors do not tip the scales in their favor." *Id.* at 344–46. A few months later, the Court of Appeals confirmed that "*Da Costa* controls" where, as here, a plaintiff "br[ings] the same challenge against the same practices of the same agency." *Mukkavilli*, 2024 WL 1231346, at *2.

Under the *TRAC* factors—as applied in *Da Costa*—Trujillo has failed to state a plausible claim of unreasonable delay. *TRAC* factor one directs that "the time agencies take to make decisions must be governed by a 'rule of reason.'" 750 F.2d at 80 (quoting *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1034 (D.C. Cir. 1983)). The Court of Appeals held in *Da Costa* that

4

"USCIS employs a rule of reason to adjudicate Form I-526 petitions" under the same "availability-screened queue" approach that Trujillo challenges here. 80 F.4th at 340–41. Although "[t]he processing time for EB-5 petitions is long, and has been increasing over time, . . . the length of the wait alone is not sufficient to show that USCIS does not follow a rule of reason in processing EB-5 applications." *Id.* at 342. To be sure, it has been more than five years since Trujillo filed her Form I-526 petition. *See* ECF 1 at 5. But this length of delay is partially inflated because it "includes both the nine-month pause in statutory authorization and the serious practical challenges posed by a global pandemic."[1] *Da Costa*, 80 F.4th at 342. When the Court of Appeals "[c]onsider[ed] those obstacles together with the competing demands on the agency" when evaluating a wait of "[f]our-and-one-half years," it rejected a *per se* rule that this length of a "processing time itself establishes that USCIS lacks a rule of reason." *Id.* (citation and internal quotation marks omitted). Given the similar delay here, *TRAC* factor one favors the government.

Trujillo's arguments to the contrary are unconvincing. Although Trujillo concedes that *Da Costa* "rejected [the] argument that USCIS has 'no processing logic' for adjudication, and instead systematically prioritizes later-filed petitions over earlier-filed petitions," she contends that this conclusion was "not supported by the data, which shows that petitions with equally available visas are being processed out of order," ECF 24 at 5. Disagreement with how the Court of Appeals resolved a case, however, does not make that decision any less binding. *See Kline v. Republic of El Salvador*, 603 F. Supp. 1313, 1316 n.6 (D.D.C. 1985) (explaining that an argument that a

---

[1] Trujillo argues that the government should not be able to subtract the time from when the Regional Center Program lacked authorization because it was possible to adjudicate Form I-526 petitions during that time even if USCIS could not formally approve any visas. ECF 20 at 4–5. But the Court of Appeals considered the facts associated with this lapse in *Da Costa* and concluded that "the nine-month pause in statutory authorization" excused delays in processing petitions to at least some degree. 80 F.4th at 337–38, 342.

decision "was wrongly decided . . . is not a basis upon which this Court would be justified in ignoring precedent from its own Court of Appeals" (citation and internal quotation marks omitted)). *Da Costa* involved the same allegation that USCIS was not following its stated procedures because it had processed some Form I-526 petitions out of order.[2] The Court of Appeals nonetheless held that "USCIS does have a processing logic: Its stated policy is to prioritize earlier-filed ahead of later-filed petitions from any country as to which EB-5 visas are available," and rejected the "conclusory assertions" about USCIS prioritizing later-filed petitions as "insufficient to show that USCIS is not following its publicly stated policy." *Da Costa*, 80 F.4th at 341. Those holdings bind the Court here.

Moreover, Trujillo's belated reliance on exhibits attached to her supplemental memorandum suggesting that some Form I-526 petitions filed after the date she filed hers have already been processed, *see* ECF 24-3; ECF 24-4, does not necessitate a departure from *Da Costa*. A "plaintiff may not amend h[er] complaint by attaching exhibits to h[er] opposition; indeed, the Court should not consider any new allegations raised in a plaintiff's opposition to a motion to dismiss." *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 314 (D.D.C. 2015). And even taking the exhibits at face value, they are too ambiguous to establish that USCIS is not following its stated policies given that they contain no information about the country of the applicants nor any other information that would allow the Court to evaluate whether the aliens'

---

[2] A review of the complaints in *Da Costa* alongside Trujillo's complaint illustrates that this argument is not new. *Compare* First Amended Complaint at 19, *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1 (D.D.C. 2022) (No. 22-cv-01576) ("Upon information and belief, USCIS has already approved thousands of later filed I-526 petitions."), *and* Complaint at 7, *Bega v. Jaddou*, 2022 WL 17403123 (D.D.C. Dec. 2, 2022) (No. 22-cv-02171) ("USCIS systematically prioritizes later filed petitions over earlier filed petitions for Form I-526 petitions."), *with* ECF 1 at 10 ("USCIS has in fact processed numerous EB-5, I-526 petitions filed long after the Plaintiff's.").

applications should have been processed after Trujillo's.  *See* ECF 24-3; ECF 24-4.  Trujillo has therefore "not raised a reasonable inference that USCIS currently is following a processing system other than its official policy."  *Da Costa*, 80 F.4th at 342.

The fourth *TRAC* factor—which *Da Costa* considered to be the other "most important" factor, *id.* at 340—also favors the government.  This factor instructs that "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.  Because "[i]mmigrant visas . . . shall be issued to eligible immigrants in the order in which a petition [o]n behalf of each such immigrant is filed," 8 U.S.C. § 1153(e)(1), "a court order requiring USCIS to adjudicate [Trujillo's] Form I-526 petition[] would move [her] ahead of longer-pending petitions," *Da Costa*, 80 F.4th at 343.  Such "disfavored line-jumping," *id.* at 339, makes this factor weigh heavily against Trujillo because granting her request to move "to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog," *id.* at 343.

Trujillo contends that she is merely "asking for an orderly adjudication"—not "that her petition be adjudicated before those filed before hers."  ECF 24 at 7.  But like the plaintiff-petitioners in *Da Costa*, Trujillo "seek[s] individual, not systemic, relief."  80 F.4th at 344.  Her complaint requests that the Court order the government to "act on *Plaintiff's* Immigrant Petition . . . within thirty (30) days."  ECF 1 at 15 (emphasis added).  If the Court were to grant her requested relief, "'it would likely impose offsetting burdens on equally worthy' EB-5 visa petitioners who are 'equally wronged by the agency's delay.'"  *Da Costa*, 80 F.4th at 344 (quoting *In re Barr Lab'ys*, 930 F.2d 72, 73 (D.C. Cir. 1991)).  This zero-sum reality "weighs against judicial intervention to expedite adjudication of [Trujillo's] petition[]."  *Id.*

7

As in *Da Costa*, Trujillo's "arguments regarding the remaining *TRAC* factors do not tip the scales in [her] favor." *Id.* Factor two, which directs that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for th[e] rule of reason," *TRAC*, 750 F.2d at 80, "somewhat favors" Trujillo, *Da Costa*, 80 F.4th at 344. The Immigration and Nationality Act states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). "[E]ven though th[is] language is insufficient to set a deadline, . . . Congress's aspirational statement [serves] as a ruler against which the agency's progress must be measured." *Da Costa*, 80 F.4th at 344 (alteration adopted) (citation and internal quotation marks omitted). But because "the delay has not reached the level of disproportionality . . . sufficient to grant relief," *id.*, Trujillo cannot prevail based on this factor alone.

Furthermore, *TRAC* factors three and five favor the government. Factor three dictates that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake," and factor five commands that "the court should also take into account the nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. In her complaint, Trujillo explains that she "has been damaged in that her funds remain at risk" and "in that she faces ongoing uncertainty about her future, which hinders her ability to make career and life choices and deprives her of the peace of mind of knowing where her future will be." ECF 1 at 13–14. Mere "financial harms . . . , along with the uncertainty that results any time an individual must continue to wait to secure a benefit," however, "are insufficient to tip *TRAC* factors three and five in h[er] favor." *Da Costa*, 80 F.4th at 345. And "[w]ithout allegations linking the

8

delayed adjudication of the[] petition to health or welfare harms, *TRAC* factors three and five do not favor [her]." *Id.*

Finally, *TRAC* factor six "is neutral here." *Id.* This factor counsels that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. Trujillo makes general assertions that the government has acted improperly and inconsistently. *See, e.g.*, ECF 1 at 7 ("Upon information and belief, this reduction in case processing output is intentional."); ECF 20 at 18–19 ("The fact alone that Defendants contradict themselves on their authority to decide I-526 petitions during the congressional lapse calls for this Court's scrutiny."). But these kinds of "conclusory" allegations are insufficient to establish that USCIS has been engaged in impropriety. *Da Costa*, 80 F.4th at 346. When taking all these factors into account, Trujillo fails to state a claim of unreasonable delay.

Accordingly, it is **ORDERED** that the government's Motion to Dismiss, ECF 19, is **GRANTED**, and the case is **DISMISSED**.

This is a final appealable Order.

The Court directs the Clerk's Office to terminate this case.

DATE: November 18, 2025

CARL J. NICHOLS
United States District Judge